IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

LINDA SEDLOCK,                    :

                Case No. 3:04-cv-204

      Plaintiff,

                Chief Magistrate Judge Michael R. Merz

   -vs-

ADT SECURITY SERVICES, INC.,

      Defendant.            :

**DECISION AND ENTRY**

This case is before the Court on Defendant ADT Security Services, Inc.'s ("ADT") Motion for Summary Judgment. (Doc. 18). The parties have fully briefed the issues, (*Id.,* Doc. 28, 32), and the matter is ripe for decision on the merits.

The parties have consented to plenary magistrate judge jurisdiction pursuant to 28 U.S.C. §636(c) and the matter has been referred on that basis. (Doc. 8).

Plaintiff Linda Sedlock brought this action against ADT, her former employer, alleging that ADT discriminated against her on the basis of her age in violation of Ohio Revised Code §§4112.02 and 4112.99; the Court's subject matter jurisdiction is based on diversity of citizenship which is uncontested.

Ms. Sedlock alleges that ADT discriminated against her when, in March, 2004, it failed to select her for promotion to the Administrative Supervisor position. (Doc. 3). Although in her Amended Complaint Ms. Sedlock refers to an April, 2003, employment decision which

eliminated her position as Administrative Manager and which resulted in her being demoted to the position of Administrative Processor, her allegations of age discrimination relate solely to ADT's failure to promote her. (Doc. 3 at ¶14).[1]

Ms. Sedlock began her employment with Wells Fargo in 1986, and in 1998, she became employed by ADT when ADT purchased Wells Fargo. Deposition of Linda Sedlock, Mar. 9, 2005, at 30-37 (filed June 27, 2005)(Doc. 26). Ms. Sedlock's job with Wells Fargo had been Accounting Coordinator and Dan Schroeder, who was at that time the Branch Manager of ADT's Dayton office, hired Ms. Sedlock to work as an Administrative Manager. *Id.*

Ms. Sedlock worked as the Administrative Manager for ADT's Dayton office for about five (5) years during which time she was never counseled or disciplined due to job performance deficiencies or for violating company policies. Deposition of Anne Beeler, Mar. 15, 2005, at 89 (filed June 27, 2005)(Doc. 22); Deposition of William DeFries, Apr. 15, 2005, at 34-25 (filed June 27, 2005)(Doc. 23); Deposition of Paula Straus, Apr. 15, 2005, at 76 (filed June 27, 2005)(Doc. 27). During that time, Ms. Sedlock's performance generally met or exceeded ADT's expectations. However, in Ms. Sedlock's March 23, 1999, performance evaluation, Mr. Schroeder noted that Ms. Sedlock needed to improve in the areas of empowering associates to make their own decisions, thinking strategically about business issues, and improving her assertiveness. Sedlock Depo. at 107-08.

During the time that Mr. Schroeder was the Branch Manager of the Dayton office, he made it clear that he did not want Ms. Sedlock working as an Administrative Manager and he

---

[1] In addition, Ms. Sedlock does not dispute ADT's argument that any age discrimination claim related to its April, 2003, decision is time barred. *Compare* Doc. 18, *with,* Doc. 28. Nor does Ms. Sedlock oppose ADT's argument that any claim for constructive discharge fails. *Id.*

2

made degrading remarks about Ms. Sedlock, such as calling her "an idiot", and "a box of rocks". DeFries Depo. at 41-42. Additionally, on at least two (2) occasions, Mr. Schroeder said that Ms. Sedlock was "too old and too out of date with the job". Straus Depo. at 26.

In about mid-1999, ADT transferred Mr. Schroeder to its Cleveland office to serve as its General Manager and Paula Straus became the General Manager of ADT's Dayton office and therefore Ms. Sedlock's supervisor. Sedlock Depo. at 42. Mr. Sedlock's performance reviews continued to be generally good although in the February, 2000, review, Ms. Straus commented that Ms. Sedlock could improve in areas including being careful of protecting employees, cross-training herself as well as employees under her supervision so that they would be able to fill in during absences, and communicating with employees regarding their weaknesses and their roles. Sedlock Depo. at 97-105. In a February 23, 2000, memo attached to Ms. Sedlock's performance appraisal, Ms. Straus also noted Ms. Sedlock's need to improve her team building skills, managing vision and strategic planning, and cross-training employees. *Id.* at 91-93.

Ms. Straus completed a performance evaluation for Ms. Sedlock in February, 2001, in which she noted that Ms. Sedlock was much more reactive than proactive, that she needed to take a greater leadership role, and that she needed to cross-train employees. *Id.* at 84-91. Additionally, Ms. Straus told Ms. Sedlock that she needed to be "not so nice" and more assertive. *Id.*

In August, 2001, William DeFries replaced Ms. Straus as the General Manager of ADT's Dayton office and he therefore assumed the supervision of Ms. Sedlock. DeFries Depo. at 8-9. Shortly thereafter, Mr. DeFries was put in charge of overseeing ADT's Toledo office. *Id.* at 24. As a result, Ms. Sedlock's responsibilities were extended to include serving as Administrative Manager of the Toledo office. *Id.* Again, Ms. Sedlock continued to receive generally favorable

reviews of her performance as Administrative Manager with her job performance described as exceeding ADT's expectations. *Id.* at 44-45. However, in an October 3, 2002, review, Mr. DeFries noted that Ms. Sedlock needed to cross-train employees, to learn to set expectations, and to follow up with direct reports. Sedlock Depo. at 73-78.

In April, 2003, ADT eliminated Ms. Sedlock's position of Administrative Manager and Ms. Sedlock accepted a demotion to the position of Administrative Processor. *Id.* at 49-50; 112-13. In August, 2003, Mr. DeFries left ADT and Jeffrey Parlette became Ms. Sedlock's supervisor in ADT's Dayton office. Deposition of Jeffrey Parlette, Mar. 17, 2005 at 32 (filed June 27, 2005)(Doc. 24); DeFries Depo at 10-11. When Mr. Parlette assumed his duties in the Dayton office, because the position of Administrative Manager did not exist, he asked Ms. Sedlock if she would take the lead role and perform certain duties which had been associated with the Administrative Manager position. Parlette Depo. at 36-37. Mr. Parlette asked Ms. Sedlock to do that because he knew that she had previously held the Administrative Manager position. *Id.*

Ms. Sedlock took courses offered by ADT and which ADT required her to take while she was an Administrative Manager. *Id.* at 95. In late 2003 or early 2004, Ms. Sedlock asked Mr. Parlette what courses he would recommend that she take to help her obtain the Administrative Manager position if it ever returned to the Dayton office. Sedlock Depo. at 17-19. Mr. Parlette suggested that Ms. Sedlock take courses in leadership and Ms. Sedlock agreed with Mr. Parlette's suggestion. *Id.* Ms. Sedlock intended to meet with a counselor to discuss educational opportunities and she intended to meet the February registration deadline for Spring courses. *Id.* at 19-21. Although she had taken courses which ADT had previously required her to take, Ms. Sedlock never took any courses on her own. *Id.* at 95-96.

Although Mr. Parlette was Ms. Sedlock's direct supervisor in the Dayton office, Anne Beeler, who was the area Administrative Manager, completed Ms. Sedlock's performance evaluations. Sedlock Depo. at 113-14; Parlette Depo. at 47-48. Mr. Parlette had the opportunity to give Ms. Beeler input as to Ms. Sedlock's evaluation before it was reviewed with Ms. Sedlock. *Id.* Ms. Beeler completed a performance review for Ms. Sedlock on January 28, 2004. *Id.* at 64. That performance review indicated an overall performance of exemplary. *Id.* at 65. However, Ms. Beeler noted that Ms. Sedlock needed improvement in the areas of conflict management and dealing with ambiguity. *Id.* at 66.

In late January, 2004, ADT began to implement numerous procedures to comply with the Sarbanes-Oxley Act[2]. Beeler Depo. at 43-44; Parlette Depo. at 54. ADT determined that there would be a need for the position of Administrative Supervisor in the Dayton office to assist with the roll-out. *Id.* The requirements for the position were similar to the Administrative Manager position, but it required a candidate with greater leadership and conflict management skills due to the Sarbanes-Oxley roll-out. Kessler Depo. at 15-16. On February 13, 2004, Ms. Sedlock saw a posting for the position and she applied. Sedlock Depo. at 113-17. In addition, Kerrie Stephenson and Kim Harris applied for the position. *Id.* Ms. Sedlock, Ms. Stephenson, and Ms. Harris were all administrative employees. *Id.* At the time she applied for the job, Ms. Sedlock was 61 years of age, Ms. Harris was a member of the protected age class, and Ms. Stephenson was outside the protected class.

Ms. Beeler and Mr. Parlette asked Sherri Kessler, ADT's Group Administrative Manager, to be on the panel that would interview the three (3) applicants because Ms. Kessler had

---

[2] Sarbanes-Oxley Act is the popular name for The Public Company Accounting Reform and Investor Protection Act, 15 U.S.C. §7201, *et seq.* [Pub.L. 107-204, 116 Stat. 745 (eff. July 30, 2002)].

5

supervisory authority over Ms. Beeler. Deposition of Sherri Kessler, Mar. 20, 2005 at 42 (filed June 27, 2005)(Doc. 25); Beeler Depo. at 48. Ms. Beeler, Mr. Parlette, and Ms. Kessler each independently interviewed Ms. Sedlock, Ms. Stephenson, and Ms. Harris, and came to their own conclusions about each candidate before participating in a conference call during which they shared their thoughts. Beeler Depo. at 58; Parlette Depo. at 77-79; Kessler Depo at 57-58. Based on the applicants' responses to their interview questions, as well as on their personal experiences with each applicant, the panel members unanimously chose Ms. Stephenson for the position. *Id.*; Beeler Depo. at 58; Parlette Depo at 77-79.

Ms. Beeler thought that Ms. Stephenson was more aggressive and persistent when dealing with managers than Ms. Sedlock, that she was very good with the administrative departments' systems, and that she had very good ideas regarding how she would approach her job and organize the office. Beeler Depo. at 51-52. On the other hand, Ms. Beeler thought that Ms. Sedlock was hesitant to meet or talk with her coworkers about changes, that she avoided conflict, that her technical knowledge was weak, and that she was very hesitant to take on new subjects. *Id.* at 73-76; 89-91. Ms. Beeler noted that Ms. Sedlock had failed to read the relevant Sarbanes-Oxley binder prior to her interview. *Id.* at 95-96. Finally, although Ms. Sedlock related during her interview that she would cross-train employees, Ms. Beeler noted that it was her experience that Ms. Sedlock had failed to do so in the past. *Id.* at 75.

Mr. Parlette thought that Ms. Stephenson's vision of where the department needed to go and that her assessment of the current condition of the department were two of Ms. Stephenson's strengths. Parlette Depo. at 69. In addition, Mr. Parlette noted that during a previous meeting about the Sarbanes-Oxley rollout, Ms. Stephenson had volunteered to take on several duties

6

related to implementing some of the Sarbanes-Oxley binders. *Id.* On the other hand, Mr. Parlette was concerned about several of Ms. Sedlock's weaknesses including her lack of leadership skills, lack communication skills, lack of a go-get-them attitude, lack of initiative, and lack of understanding the systems in which the administrative department operated as well as her failure to timely take care of tasks. *Id.* at 67. In addition, although he had never counseled or disciplined her about it, Mr. Parlette was concerned about Ms. Sedlock's failure to satisfactorily perform aspects of her administrative job related to Sarbanes-Oxley. *Id.* at 34-35.

      Ms. Kessler noted Ms. Stephenson's knowledge of ADT's many administrative systems, particularly CARMS which is the system ADT uses for accounts receivable cash flow and bad debt. Kessler Depo. 47-48. In addition, Ms. Kessler noted that Ms. Stephenson was organized, stood up for herself, and confronted others when necessary. *Id.*; *Id.* at 65. Ms. Kessler was also favorably impressed with Ms. Stephenson's co-worker skills and her initiative. *Id.* at 60. In contrast, Ms. Kessler was concerned with Ms. Sedlock's admitted need to improve her knowledge about ADT's systems, particularly CARMS. Kessler Depo. at 63-68. Ms. Kessler also thought that Ms. Sedlock was not a strong leader and that she would be better suited to a human resources position with nobody reporting to her. *Id.*

      On March 3, 2004, Mr. Parlette advised Ms. Sedlock that the panel had chosen Ms. Stephenson for the job. Sedlock Depo. at 118-19. Mr. Parlette told Ms. Sedlock that the panel members thought that Ms. Stephenson had a better vision for the department. *Id.* at 119. Up until this time, Ms. Sedlock was the only administrative processor who had a private office. *Id.* Due to the addition of a new management position, Mr. Parlette moved Ms. Sedlock out of her private office, he moved into that office, and Ms. Stephenson moved into Mr. Parlette's former office. *Id.*

7

Ms. Sedlock was given a work area with the other Administrative Processors. *Id.* However, Mr. Parlette assured Ms. Sedlock that the changes would not result in a pay cut and that she would continue to have the same job functions and duties that she had been performing. Sedlock Depo. at 65; 120. However, Ms. Sedlock just didn't feel comfortable with what ADT was doing and she resigned. *Id.* at 126-17. Ms. Sedlock tendered her resignation by way of letter dated March 4, 2004, in which she did not give any reasons for resigning but in which she said, "Although there is much to say, I believe the reasons leading to this decision [to resign] are known to you, and will therefore leave them unsaid at this time." Sedlock Depo. Ex. 19 (filed May 31, 2005)(Doc. 19).

The Ohio Supreme Court has held that federal case law addressing employment discrimination matters is applicable in deciding cases filed under Ohio's anti-discrimination laws. *Plumbers & Steamfitters Joint Apprentice Comm. v. Ohio Civil Rights Comm'n,* 66 Ohio St.2d 192, 196 (1981).

The ADEA was prompted by a concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes that productivity and competence decline with age. *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610 (1993). The ADEA prohibits discrimination in employment on the basis of age and not class membership. *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308 (1996). Although the Supreme Court has never "squarely addressed" whether the *McDonnell Douglas* framework applies to age discrimination cases, it has recently assumed arguendo that it does and used that framework in its own analysis. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). A plaintiff must prove at least the following four elements to establish a *prima facie* case of age discrimination: (1) she was a member of the protected class (age 40 to 70); (2) she was subjected to an adverse employment

8

action; (3) she was qualified for the position; and (4) she was replaced by a younger person. *LaPointe v. United Autoworkers Local 600,* 8 F. 3d 376, 379 (6th Cir. 1993); *Gagne v. Northwestern Nat'l. Ins. Co.*, 881 F. 2d 309, 313 (6th Cir. 1989); *Simpson v. Midland-Ross Corp.*, 823 F. 2d 937, 941 (6th Cir. 1987). The fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of an ADEA *prima facie* case. *O'Connor, supra.* However, the age gap must be "substantial" to support an inference of discrimination. *Bush v. Dictaphone Corp.*, 161 F. 3d 363 (6th Cir. 1998).

To establish a *prima facie* case of discrimination based upon a failure to promote requires the plaintiff must prove that she (1) was a member of a protected group, (2) applied for and was qualified for the desired position, (3) was considered for and denied the promotion, and (4) the position remained open after her rejection or went to a less-qualified applicant who was younger than the plaintiff. See *Farmer v. Cleveland Public Power*, 295 F.3d 593, 603 (6th Cir. 2002); *O'Connor, supra.*

If plaintiff establishes a *prima facie* case, the burden of production passes to defendant to articulate a legitimate nondiscriminatory reason. *Simpson,* 823 F. 2d at 940. If such a reason is proffered, the employee bears the burden of showing that it is not the true reason and that the true reason was based on a discriminatory motive. *Gagne,* 881 F.2d at 313. Even if these elements are established, plaintiff must still show that age was a determining factor in the adverse employment action against him, which is the ultimate question. *Simpson, supra*; *Ackerman v. Diamond Shamrock*, 670 F. 2d 66 (6th Cir. 1982); *Blackwell v. Sun Electric Corp.,* 696 F. 2d 1176 (6th Cir. 1983). To rebut the employer's proffered explanation, a plaintiff must show "by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact*, (2) that the

9

proffered reasons did not *actually* motivate the employment action, or (3) that they were *insufficient* to motivate the action." *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F. 3d 1078, 1084 (6th Cir. 1994)(citation omitted). Under the first alternative, a plaintiff produces evidence that the proffered reasons are factually false; under the second, that while the proffered reasons would be sufficient to motivate an adverse employment action, they were not the real reasons in the case in suit; under the third, that similarly situated persons not in the protected class were better treated. *Id*.

If a plaintiff can establish direct evidence of discrimination, then she need not go through the *McDonnell Douglas* burden-shifting analysis. *Rowan v. Lockheed Martin Energy Systems, Inc.,* 360 F.3d 544, 548 (6th Cir. 2004)(citation omitted). Direct evidence is evidence that proves the existence of a fact without requiring any inferences. *Rowan, supra.*(citations omitted). To state a claim via direct evidence, an employee must produce "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." See *DiCarlo v. Potter,* 358 F.3d 408, 415 (6th Cir. 2004)(citation omitted).

In assessing the relevancy of a discriminatory remark, the court looks first at the identity of the speaker. *Ercegovich v. Goodyear Tire and Rubber Co.,* 154 F.3d 344, 354 (6th Cir. 1998). An isolated discriminatory remark made by one with no managerial authority over the challenged personnel decision is not considered indicative of age discrimination. *Id.*, citing *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1161 (6th Cir. 1990). ("[S]tatement by an intermediate level management official is not indicative of discrimination when the ultimate decision to discharge is made by an upper level official."). The Sixth Circuit has explained, however, that the *McDonald* rule was never intended to apply formalistically, and that remarks by those who did not independently have the authority or did not directly exercise their authority to fire the plaintiff

10

but who nevertheless played a meaningful role in the decision to terminate the plaintiff were relevant. *Ercegovich,* 154 F.3d at 354-55(citations omitted).  Similarly, the discriminatory remarks of those who may have influenced the employment decision may be relevant when the plaintiff challenges the motive behind that decision.  *Id.* at 355.

Consideration of a speaker's role in the employment decision adversely affecting the plaintiff does not end the inquiry.  *Id.* The substance of the discriminatory remarks must be examined to determine their relevancy to a plaintiff's claim that an impermissible factor motivated the adverse employment action.  *Id.*  Isolated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination.  *Id.*(citations omitted). Although a direct nexus between the allegedly discriminatory remarks and the challenged employment action affects the remark's probative value, the absence of a direct nexus does not necessarily render a discriminatory remark irrelevant.  *Id.*

In general, the use of subjective criteria must be closely analyzed.  *Shack v. Southworth*, 521 F. 2d 51, 55-56 (6th Cir. 1975);  *Tye v. Bd. of Ed., Polaris Dist*., 811 F. 2d 315 (6th Cir. 1987).   While the use of subjective criteria is permissible in the selection of management positions, the ultimate issue in each case is whether subjective criteria were used to disguise discriminatory action.  See *Grano v. Dept. of Development of the City of Columbus,* 699 F. 2d 836, 837 (6th Cir. 1983), followed in *Farber v. Massillon,* 917 F. 2d 1391 (6th Cir. 1990).  Interviews are a legitimate, non-discriminatory selection procedure.  *Hayes v. Russo,* 960 F.2d 149 (6th Cir., 1992)(citations omitted).

The Court first addresses the question of whether Ms. Sedlock has presented any direct evidence of age discrimination.  Presumably, her position is that the alleged discriminatory

11

remarks which she claims Mr. Schroeder made are direct evidence that ADT failed to promote her on the basis of her age.

As noted above, during the time Mr. Schroeder was the Branch Manager of ADT's Dayton office, he made degrading remarks about Ms. Sedlock such as calling her "an idiot" and "a box of rocks" and that on at least two (2) occasions he said that Ms. Sedlock was "too old and too out of date with the job." Mr. Schroeder was the Branch Manager, and therefore Ms. Sedlock's supervisor, when Ms. Sedlock began working for ADT in 1998. Mr. Schroeder left the Dayton office in mid-1999 when he transferred to ADT's Cleveland office and became ADT's General Manager.

When Mr. Schroeder allegedly made the discriminatory remarks about Ms. Sedlock, he was her immediate supervisor. Arguably, then, if Mr. Schroeder had taken any adverse employment action against Ms. Sedlock during the time he was her supervisor, the evidence Ms. Sedlock has produced as to Mr. Schroeder's remarks would, at this stage of the litigation, be direct evidence of age discrimination sufficient for Ms. Sedlock to prevail against ADT's present motion. However, the employment action about which Ms. Sedlock complains did not occur until 2004, several years after Mr. Schroeder left the Dayton office. Indeed, between the time Mr. Schroeder allegedly made the age-related remarks and the time ADT declined to promote Ms. Sedlock to the position of Administrative Supervisor, Ms. Seldock had worked under three (3) succeeding supervisors.[3]

However, the Court's inquiry does not stop here. Although Mr. Schroeder made the age-related remarks years before ADT declined to promote Ms. Sedlock, the question becomes

---

[3] Ms. Straus succeeded Mr. Schroeder in mid-1999, Mr. DeFries succeeded Ms. Straus in August, 2001, and Mr. Parlette succeeded Mr. DeFries in August, 2003.

whether Mr. Schroeder was a part of the decision-making process or whether he had an influence as to ADT's failure to promote Ms. Sedlock. This Court concludes that he did not.

The evidence shows that Ms. Beeler, Mr. Parlette, and Ms. Kessler comprised the panel which was responsible for interviewing the three (3) applicants for the Administrative Supervisor position and selecting Ms. Stephenson for the position. Ms. Sedlock testified that she is not aware of any other individual who had input into the panel's decision. Sedlock Depo. at 146. In addition, the members of the panel each testified that they were the only individuals who made the decision to promote Ms. Stephenson rather than Ms. Sedlock. Beeler Depo. at 46-47; Parlette Depo. at 58; Kessler Depo. at 42. There is simply no evidence that Mr. Schroeder played any role in the employment action about which Ms. Sedlock complains. There is absolutely no nexus between Mr. Schroeder's comments and ADT's failure to promoted Ms. Sedlock.

The Court now turns to the question of whether Ms. Sedlock has, at this stage of the litigation, produced sufficient evidence to sustain her burden under the *McDonnell Douglas* analysis.

For purposes of the present Motion, the Court will assume *arguendo* that Ms. Sedlock has established the first three (3) prongs of a *prima facie* case of age discrimination in her failure to promote claim. That is, the Court will assume that Ms. Sedlock has proven she (1) is a member of the protected class; (2) applied for and was qualified for the position of, and promotion to, Administrative Supervisor; and (3) was considered for the and denied the promotion. The issue is, then, whether Ms. Sedlock has established the fourth prong: that after ADT rejected her for the promotion to Administrative Supervisor, it chose a less qualified applicant who was younger than Ms. Sedlock. There does not appear to be any dispute that at the time ADT chose Ms. Stephenson

13

for the promotion to Administrative Supervisor, she was substantially younger than Ms. Sedlock.[4] Ms. Sedlock, then, must establish that Ms. Stephenson was "less qualified" than she was.

In support of her position that she was more qualified than Ms. Stephenson, Ms. Sedlock relies in great part on the fact that she had more experience because she previously held the position of Administrative Manager in ADT's Dayton office. However, it does not automatically follow from the fact that Ms. Sedlock may have had more *experience* than Ms. Stephenson that she was more *qualified* than Ms. Stephenson. See *Frausto v. Legal Aid Society of San Diego, Inc.,* 563 F.2d 1324, 1328 (9th Cir. 1977), cited with approval in *Wrenn v. Gould,* 808 F.2d 493, 502 (6th Cir. 1987). In addition, the record is clear that the anticipated position of Administrative Supervisor would differ substantially from the Administrative Manager position that Ms. Sedlock had previously held. This is true primarily because ADT determined the need for the Administrative Supervisor position based on its recent implementation of numerous procedures necessary to comply with the Sarbanes-Oxley Act. Additionally, each member of the panel that interviewed and rated each of the three (3) applicants for the Administrative Supervisor position articulated specific reasons why he or she determined that Ms. Stephenson was actually the most qualified candidate.

Specifically, Ms. Beeler thought that Ms. Stephenson was more aggressive and persistent when dealing with managers than Ms. Sedlock who, she thought, was hesitant to meet or talk with others about change and avoided conflict and change. Ms. Beeler also though that Ms. Stephenson was very good with the administrative departments' systems while Ms. Sedlock's technical knowledge was weak. Ms. Beeler noted that Ms. Stephenson has read the relevant Sarbanes-Oxley material prior to her interview while Ms. Sedlock had not. Finally, Ms. Beeler was

---

[4] There is an indication in the record that Ms. Stephenson was half of Ms. Sedlock's age.

concerned that while Ms. Sedlock stated during her interview that she would cross-train employees, it was her (Ms. Beeler's) experience that Ms. Sedlock had failed to do so in the past when she was an Administrative Manager.

Mr. Parlette thought that Ms. Stephenson's vision of where the department needed to go and her assessment of the current condition of the department were two (2) of her strengths. In contrast, Mr. Parlette thought that Ms. Sedlock had several weaknesses including her lack of leadership and communication skills, lack of initiative, and her lack of understanding of the systems in which the administrative department operated. Mr. Parlette noted that during a previous meeting about the Sarbanes-Oxley rollout, Ms. Stephenson had volunteered to take on several duties related to implementing some of the Sarbanes-Oxley binders while Ms. Sedlock had not even read the materials prior to the interview.

Ms. Kessler took note of Ms. Stephenson's knowledge of ADT's many administrative systems, particularly CARMS. On the other hand, she noted Ms. Sedlock's admitted need to improve her knowledge about ADT's systems, particularly CARMS. Further, Ms. Kessler thought that Ms. Stephenson was organized, stood up for herself, had good co-worker skills, and took initiative while she thought that Ms. Sedlock was not a strong leader and that she was better suited for a position in which nobody reported to her.

This Court is aware of the fact that, in general, the use of subjective criteria must be closely analyzed. *Shack, supra; Tye, supra.* However, each of the panel members identified specific criteria which she or he used to compare the candidates for the Administrative Supervisor position. Each panel member articulated very specific reasons as to why she or he determined that Ms. Stephenson was "more qualified" for the position than was Ms. Sedlock. There is simply no

evidence to indicate that the members of the panel, each of whom acted independently from the other members, used subjective criteria to disguise discriminatory action. Accordingly, this Court concludes that Ms. Sedlock has failed to establish the fourth prong of a *prima facie* case of age discrimination in the failure to promote context.

Even assuming that Ms. Sedlock had successfully met her burden of establishing a *prima facie* case, her claim under the ADEA would fail.

Under *McDonnell Douglas,* if Ms. Sedlock had established a *prima facie* case, the burden would shift to ADT to articulate a legitimate nondiscriminatory reason for its action. ADT has done so. Specifically, for all of the reasons specifically articulated by each member of the selection panel, *supra,* ADT determined that Ms. Stephenson was more qualified for the position of Administrative Supervisor than was Ms. Sedlock.

*McDonnell Douglas* requires that Ms. Sedlock now show that the reasons ADT articulated were not the true reasons for the challenged employment action and that the true reason was based on a discriminatory motive. Ms. Sedlock can accomplish that by showing that ADT's proffered reasons had no basis *in fact*, did not *actually* motivate the employment action, or that they were *insufficient* to motivate the action. However, Ms. Sedlock has failed to carry her burden in this regard. Specifically, Ms. Sedlock has not come forward with any evidence whatsoever to show that the reasons ADT articulated were not the true reasons for the challenged employment action. Indeed, Ms. Sedlock testified that each of the members of the panel were entitled to his or her opinion as to the qualifications of each candidate and that none of the reasons they gave for finding Ms. Stephenson more qualified were discriminatory or based on a discriminatory motive. Sedlock Depo. at 156-66.

16

This Court concludes that there are no genuine issues of material fact and that ADT is entitled to judgment as a matter of law on Ms. Sedlock's claims.

Defendant ADT Security Services, Inc.'s Motion for Summary Judgment, (Doc. 18), is GRANTED. The Clerk shall enter judgment in favor of Defendant ADT Security Services, Inc. and against Plaintiff Linda Sedlock, dismissing the Amended Complaint with prejudice.

August 20, 2005.

                                                s/ **Michael R. Merz**
                                                Chief United States Magistrate Judge

J:\Sedlock_MSJ.wpd